## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KARA JO ANN DRESSING, | |
| Plaintiff, | CIVIL ACTION NO. 3:22-cv-01988 |
| v. | (SAPORITO, C.M.J.) |
| MARTIN J. O'MALLEY,[1] Commissioner of Social Security, | |
| Defendant. | |

## MEMORANDUM

In this matter, the plaintiff, Kara Jo Ann Dressing, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Martin J. O'Malley became the Commissioner of Social Security on December 20, 2023. He has been automatically substituted in place of the original defendant, Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I.   BACKGROUND

On September 1, 2020, Dressing protectively filed a claim for disability insurance benefits, asserting a disability onset date of July 31, 2018. The claim was initially denied by state agency reviewers on March 3, 2021, and upon reconsideration on April 21, 2021. The plaintiff then requested an administrative hearing.

A telephone hearing was held on September 1, 2021, before an administrative law judge, Scott M. Staller (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Paul Anderson. The plaintiff was represented by counsel at the hearing.

On September 15, 2021, the ALJ denied Dressing's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Dressing was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Dressing had not engaged in substantial gainful activity since her alleged disability onset date. At step two, the ALJ found that Dressing had the

severe impairments of: rheumatoid arthritis, diabetes mellitus, celiac disease, and anemia. At step three, the ALJ found that Dressing did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential evaluation process, the ALJ assessed Dressing's residual functional capacity ("RFC"). *See generally id.* at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Dressing had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b),[2] with the following limitations:

> [T]he claimant can stand and/or walk for up to four (4) hours in an eight (8) hour workday. She can engage in frequent handling and fingering with her bilateral upper extremities. The claimant can occasionally climb ramps, stairs, ladders, ropes and scaffolds. She can occasio[na]lly balance, stoop, kneel, crouch or crawl. The claimant can tolerate frequent exposure to unprotected heights, moving mechanical parts, humidity, wetness, extreme cold and extreme heat.

(Tr. 14.)

_____

[2] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

In making these factual findings regarding Dressing's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 404.1529; Soc. Sec. Ruling 16-3p, 2017 WL 5180304. The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 404.1520c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that, since her alleged onset date, Dressing was unable to perform her past relevant work as a caterer, as actually or generally performed.

At step five, the ALJ concluded that Dressing was capable of performing work that exists in significant numbers in the national economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Dressing was capable of performing the requirements of representative occupations such as cashier II (DOT #211.462-010), ticket taker (DOT #344.667-010), or potato chip sorter (DOT # 526.687-010). Based on this finding, the ALJ concluded that Dressing was not disabled for Social

Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on October 25, 2022, making the ALJ's September 2021 decision the final decision of the Commissioner subject to judicial review by this court.

Dressing timely filed her complaint in this court on December 15, 2022. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits administrative decisions).

Dressing asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ found certain of her

impairments "not severe" at step two of the five-step sequential evaluation process, despite compelling evidence to the contrary; (2) the ALJ failed to properly evaluate prior administrative findings, including the medical opinions of non-examining state agency medical consultants; (3) the ALJ failed to properly evaluate the medical opinions of an examining physician; (4) the ALJ failed to properly evaluate the medical opinions of her treating physician assistant; and (5) the ALJ failed to properly consider subjective evidence regarding Dressing's symptoms, including statements or testimony by Dressing herself.[3]

## A. Step Two Determination

The plaintiff appears to contend that the ALJ erred in finding that various of Dressing's medical conditions were not severe impairments.

At step two, the ALJ found that Dressing had several severe

---

[3] The plaintiff's brief articulated three conclusory, extremely general claims of error: (1) the ALJ's RFC determination failed to include all limitations caused by her severe impairments; (2) the ALJ's RFC determination failed to include all limitations caused by impairments the ALJ found to be non-severe, or never mentioned; and (3) the ALJ's RFC determination was defective because the ALJ failed to afford appropriate weight to medical opinions on which it was based. Although not clearly articulated by plaintiff's counsel, a close reading of the plaintiff's brief reveals that these very generalized grievances rest on the specific errors we have articulated above.

impairments including: rheumatoid arthritis, diabetes mellitus, celiac disease, and anemia. The ALJ then proceeded on to step three of the five-step sequential evaluation process.

At step two, a claimant bears the burden of proving that she suffers from "a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). But the step-two inquiry is merely "a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "[T]he analysis at step two is wholly independent of the analysis at later steps. . . . [N]ot finding certain impairments severe at step two does not affect the ultimate disability determination." *Alvarado v. Colvin*, 147 F. Supp. 3d 297, 311 (E.D. Pa. 2015); *see also Orr v. Comm'r Soc. Sec.*, 805 Fed. App'x 85, 88 (3d Cir. 2020) ("[B]ecause the ALJ progressed to a later step, any error at Step Two would not alter that remainder of the five-step process, much less the overall outcome."); *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (per curiam) ("Step two is a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."); *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [the claimant's] favor at

Step Two, even if he had erroneously concluded that some other impairments were nonsevere, any error was harmless.").

Here, the ALJ found in Dressing's favor at step two, finding that she had several other severe impairments, and then proceeded on to step three of the five-step sequential evaluation process. Thus, any error with respect to evaluation of the severity of any other impairments at step two was harmless and provides "no valid basis for remand." *See Orr*, 805 Fed. App'x at 88.

### B. Medical Opinions and Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607,

620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed her administrative claim for benefits in September 2020. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior

to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520(a), "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. § 404.1520. If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. § 404.1520c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating

source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. § 404.1520c(c)(1) (supportability), and *id.* § 404.1520c(c)(2) (consistency), *with id.* § 404.1527(c)(3) (supportability), and *id.* § 404.1527(c)(4) (consistency).[4] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. § 404.1520(c)(b)(2); *see also Densberger*, 2021 WL 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. § 404.1520c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining]

---

[4] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R.

§ 404.1520c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

### 1. *State Agency Medical Consultants*

The prior administrative findings in this case included the opinions

of state agency consultants, Roman Oleh Bilynsky, M.D., recorded on

March 2, 2021, and Karel Ann Keiter, D.O., recorded on April 20, 2021.

Based on his review of Dressing's medical records, Dr. Bilynsky

found Dressing capable of lifting or carrying up to 20 pounds occasionally

and up to 10 pounds frequently, standing or walking up to 4 hours in an

8-hour workday, and sitting about 6 hours in an 8-hour workday, with no

limitations to her ability to push or pull, including the operation of hand

or foot controls. Dr. Bilynsky found that Dressing was capable of

occasional balancing, kneeling, crouching, crawling, or climbing of

ramps, stairs, ladders, ropes, or scaffolds, and frequent stooping. He

found no manipulative limitations. Dr. Bilynsky did find, however, that

Dressing should avoid concentrated exposure to extreme temperatures,

wetness and humidity, and hazards such as machinery or heights; he

found no limitations with respect to noise, vibration, fumes, odors, dusts,

gases, or poor ventilation. (Tr. 77–82.) In evaluating Dr. Bilynsky's

opinion, the ALJ stated:

> While the undersigned finds that the limitation for stooping is not restrictive enough, overall, the undersigned finds that this opinion is supported by objective findings of a normal gait and stance, despite difficulty standing and/or walking on her toes, and no joint deformity with intact strength despite having tenderness in her bilateral knees, wrists, and shoulders, and is consistent with the claimant's indication that she performs her personal care activities independently and drives herself to and from places. Accordingly, this opinion is partially persuasive.

(Tr. 17 (citations omitted).)

Based on her review of Dressing's medical records, Dr. Keiter found Dressing capable of lifting or carrying up to 20 pounds occasionally and 10 pounds frequently, standing or walking up to 4 hours in an 8-hour workday, sitting about 6 hours in an 8-hour workday, with no limitations to her ability to push or pull, including the operation of hand or foot controls. Dr. Keiter found that Dressing was capable of occasional balancing, stooping, kneeling, crouching, crawling, or climbing of ramps, stairs, ladders, ropes, or scaffolds. She found no manipulative limitations. Dr. Keiter did find, however, that Dressing should avoid concentrated exposure to extreme temperatures, wetness and humidity, and hazards such as machinery or heights; he found no limitations with

respect to noise, vibration, fumes, odors, dusts, gases, or poor ventilation.[5] (Tr. 95–100.) In evaluating Dr. Keiter's opinion, the ALJ stated:

> The undersigned finds that this opinion is supported by objective findings of a normal gait and normal foot examination, including intact sensation to monofilament and intact upper and lower extremity strength, and is consistent with the claimant's indication that she performs her personal care activities independently and drives herself to and from places. Accordingly, this opinion is persuasive.

(Tr. 17 (citation omitted).)

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. He expressly articulated the basis of his evaluation and his findings with respect to the persuasiveness of this opinion as well.

The plaintiff only addresses the evaluation of these particular medical opinions in passing, in the penultimate paragraph of her brief. She appears to primarily object to this evaluation of the state agency medical consultants' findings and opinions based on the fact that, unlike her treating physician assistant and the consultative examining

---

[5] Essentially, Dr. Keiter agreed with Dr. Bilynsky's findings, except for the stooping limitation.

physician, the state agency medical consultants never actually examined Dressing in person and rendered their opinions prior to some of the medical records being submitted. But the medical opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may serve as substantial evidence to the extent the opinion is consistent with other medical evidence in the record. *See Nichols v. Comm'r of Soc. Sec.*, 404 Fed. App'x 701, 704–05 (3d Cir. 2010); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 107 (W.D.N.Y. 2021); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018).

Accordingly, we find the ALJ's evaluation of the prior administrative findings concerning the plaintiff's physical limitations, including the medical opinions of the state agency medical consultants, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 2. *Consultative Examining Physician*

The record before the ALJ included an internal medicine examination report based on a February 2021 physical exam by a consultative examining physician.

Dressing was evaluated by an independent consultative examiner, Ahmed Kneifati, M.D., on February 17, 2021. On examination, Dr. Kneifati observed that Dressing was in no acute distress, with normal gait and stance, but limited to 45% squat. He observed that Dressing had difficulty standing and walking on her toes because of pain in her left foot—especially the big toe and little toe—but she was able to stand and walk on the heels on her right side. He noted that Dressing brought no assistive device to the exam, she needed no help changing clothes for the exam or getting on and off the exam table, and she was able to rise from a chair without difficulty. On examination of Dressing's abdomen, Dr. Kneifati found bowel sounds to be normal, her abdomen to be soft and nontender with no hepatosplenomegaly or masses and no abdominal bruits. Dr. Kneifati found no scoliosis, kyphosis, or abnormality in the thoracic spine. Dressing's straight leg raise was negative bilaterally, both seated and supine. Dr. Kneifati found medial tenderness in both knees and both wrists, anterior tenderness in both shoulders, bilateral hip tenderness, and tenderness in the metacarpophalangeal joints of her left big toe and left little toe. He observed no redness, heat, or effusion, and no trigger points. Dr. Kneifati found physiologic and equal deep tendon

reflexes in upper and lower extremities, no sensory deficits, and 5/5 strength in the upper and lower extremities. Dr. Kneifati found no cyanosis, clubbing, or edema of the extremities, physiologic and equal puslses, no significant varicosities or trophic changes, and no evident muscle atrophy. Although Dr. Kneifati estimated only 80% hand strength bilaterally, he found her range of motion to be within normal limits, and he noted that she was able to use her hands to zip, button, or tie. Dr. Kneifati recorded diagnoses of diabetes, rheumatoid arthritis, pain in the shoulder, hand, and wrist, pain in the hips, knees, feet, and ankles, especially her left big toe and left little toe, and celiac disease, with a fair prognosis. (Tr. 468–71, 478–79.)

Dr. Kneifati also completed an agency form report on Dressing's ability to do work-related activities. He opined that Dressing was capable of lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently. He found that Dressing was capable of sitting up to 2 hours without interruption and up to 5 hours total per 8-hour workday, standing up to 1 hour without interruption and up to 4 hours total per 8-hour workday, and walking up to 30 minutes without interruption and up to 3 hours total per 8-hour workday. He noted that Dressing did not

require a cane to ambulate. As for manipulative limitations, Dr. Kneifati found that Dressing was capable of continuous bilateral reaching, but she was limited to frequent bilateral handling, fingering, feeling, and pushing or pulling. With respect to the use of her feet, Dr. Kneifati found that Dressing was limited to operating foot controls frequently with her right foot and only occasionally with her left foot. Dr. Kneifati found that Dressing was limited to only occasional balancing, stooping, kneeling, crouching, crawling, or climbing of stairs, ramps, ladders, or scaffolds. Dr. Kneifati found that Dressing was subject to certain environmental limitations, including no more than occasional exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, and extreme cold or heat, but no limitations with respect to noise, vibrations, and dust, odors, fumes, or other pulmonary irritants. Dr. Kneifati opined that Dressing was not capable of walking a block at a reasonable pace on rough or uneven surfaces, but he found no other limitations due to Dressing's physical impairments. (Tr. 472–77.)

In evaluating Dr. Kneifati's opinion, the ALJ stated:

> While the undersigned agrees with many of the limitations stated, in regards to the sitting and foot controls limitations, the undersigned finds that this opinion is not supported by the doctor's own

examination which revealed negative straight leg raise tests, intact joints, and intact upper and lower extremity strength. The undersigned also finds that this limitation is inconsistent with the claimant's indication that she drives herself to and from places independently and spends time watching television. Accordingly, this opinion is partially persuasive.

(Tr. 17 (citations omitted).)

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. He expressly articulated the basis of his evaluation and his findings with respect to the persuasiveness of this opinion as well. The plaintiff quibbles with the ultimate outcome of the ALJ's evaluation of Dr. Kneifati's opinion, arguing that various factors support a contrary conclusion, but it is clear that the ALJ's findings with respect to Dr. Kneifati's opinion are supported by substantial evidence.

Accordingly, we find the ALJ's evaluation of the February 2021 medical opinion by a consultative examining physician, Dr. Kneifati, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 3. *Treating Physician Assistant*

The record before the ALJ included a physical residual functional

capacity questionnaire completed by Dressing's treating primary care provider, Maureen Clayman, PA-C.

On August 16, 2021, PA Clayman completed a physical residual functional capacity questionnaire. PA Clayman noted that Dressing had been a patient of hers since 2014. She reported diagnoses of Type 1 diabetes mellitus, rheumatoid arthritis, and celiac disease. PA Clayman reported Dressing's symptoms as including fatigue, muscle and joint pain, depression, and anxiety. When asked to identify clinical findings and objective signs, PA Clayman reported that Dressing sees a specialist for her arthritis and diabetes, and that she is on multiple medications. PA Clayman noted that Dressing's diabetes caused both hypo- and hyperglycemia, which could further cause her to experience dizziness, fatigue, lightheadedness, and nausea, and her rheumatoid arthritis caused exacerbated joint pain and swelling. PA Clayman opined that Dressing's pain or other symptoms were severe enough to frequently interfere with the attention and concentration needed for her to perform even simple work tasks, and that Dressing was capable of performing only low-stress jobs. PA Clayman reported that Dressing was only capable of walking 2 city blocks without rest or severe pain, and she was

capable of sitting or standing no more than 30 minutes at a time. PA Clayman opined that Dressing was capable of sitting, standing, or walking less than 2 hours per 8-hour workday. PA Clayman reported that Dressing would require a job that permitted her to change positions at will, and that would permit her to take unscheduled breaks as often as every 30 minutes throughout an 8-hour workday. With prolonged sitting, PA Clayman indicated that Dressing's legs would need to be elevated above her chest "as often as possible." PA Claymant further reported that Dressing would require the use of a walker to ambulate whenever she experienced an arthritic flare-up. PA Clayman opined that Dressing was capable of lifting or carrying no more than 10 pounds on a frequent basis, provided she was not experiencing an arthritic flare-up, and she was capable of lifting or carrying more than 10 pounds only occasionally. PA Clayman opined that Dressing was capable of looking down only rarely, and looking up or turning her head from side to side only occasionally. She opined that Dressing could never crouch, squat, or climb ladders, and she could only occasionally twist, stoop, bend, or climb stairs. PA Clayman opined that Dressing was limited to using her arms to reach, her hands to grasp, turn, or twist objects, and her fingers for fine

manipulations no more than 50% of an 8-hour workday when *not* experiencing an arthritic flare-up (and 0% when experiencing one). PA Clayman indicated that Dressing's impairments were likely to produce "good days" and "bad days," that she would be absent from work 6 to 10 days per month due to her impairments or treatment and that she would be off task more than 15% per 8-hour workday. (Tr. 689–94.)

Upon review, the ALJ found this medical opinion not persuasive. In particular, the ALJ found that:

> [T]his opinion is overly limiting and appears to rely more on the claimant's subjective complaints of fatigue, rather than objective findings of intact upper and lower extremity strength, a normal gait, and intact sensations. The undersigned also finds that this opinion is not consistent with the claimant's own indication that she prepares meals a few times per week, performs her own personal grooming, and does chores of laundry and cleaning in the home.

(Tr. 18 (citations omitted).)

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. He expressly articulated the basis of his evaluation and his findings with respect to the persuasiveness of this opinion as well. The plaintiff quibbles with the ultimate outcome of the ALJ's evaluation of PA Clayman's opinion,

arguing that various factors support a contrary conclusion, but it is clear that the ALJ's findings with respect to PA Clayman's opinion are supported by substantial evidence.

Accordingly, we find the ALJ's evaluation of the August 2021 opinion by a treating physician assistant, PA Clayman, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### C. Subjective Evidence of the Plaintiff's Symptoms

The plaintiff appears to also contend that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of Dressing's symptoms, including subjective statements or testimony by Dressing herself. *See generally* 20 C.F.R. § 404.1502(i) ("Symptoms means your own description of your physical or mental impairment.").

Standing alone, a claimant's allegation of pain or other symptoms is not enough to establish an impairment or disability. 20 C.F.R. § 416.929(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . .").

"An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so." *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999)).

When evaluating a claimant's subjective allegations of pain or other symptoms, an ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *2 (revised Oct. 25, 2017). First, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *Id.* at *3; *see also* 20 C.F.R. § 404.1529(b). A claimant cannot be found to be "disabled based on alleged symptoms alone." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4.

Once the ALJ has found that a medically determinable impairment has been established, the ALJ must then evaluate the claimant's allegations about the intensity, persistence, or functionally limiting effects of his or her symptoms against the evidence of record. *Id.* This evaluation requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and

other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, in evaluating the plaintiff's symptoms, the ALJ expressly considered and extensively discussed both the medical and non-medical evidence in the record. (Tr. 15–18.) This included the plaintiff's statements regarding the limiting effects of her symptoms. Based on his consideration of the whole record, the ALJ properly concluded that, while Dressing's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 15.)

Although Dressing quibbles with the outcome of the ALJ's analysis of the evidence of record, it is clear that the ALJ properly evaluated the plaintiff's symptoms in accordance with the applicable regulations, and that the ALJ reasonably concluded that, notwithstanding the plaintiff's subjective complaints of pain and other symptoms, the evidence as a whole did not support physical or mental limitations in excess of those set forth in the ALJ's RFC determination. While this same evidence

might have also reasonably supported the adoption of substantially greater limitations, it did not compel such a finding.

Accordingly, we find the ALJ's evaluation of the subjective evidence of the plaintiff's symptoms is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Dressing was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate order follows.

Dated: March 29, 2024              *s/Joseph F. Saporito, Jr.*
                                   JOSEPH F. SAPORITO, JR.
                                   Chief United States Magistrate Judge